UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LAMART MASON and
KRYSTAL LEE MASON,

                    Plaintiffs,                          No. 10-CV-14182

vs.                                           Hon. Gerald E. Rosen

THE CITY OF WARREN POLICE
DEPARTMENT, THE CHIEF OF POLICE,
individually and in his official capacity,
DETECTIVE WILLIAM ASHCROFT,
individually and in his official capacity,
DETECTIVE SEAN JOHNSTON,
individually and in his official capacity,
OFFICER SHAWN JOHNSON, individually
and in his official capacity, OFFICER
BANKOWSKI, individually and in his official
capacity, and OFFICER MASSERANG,
individually and in his official capacity,

                    Defendants.
_____/

**OPINION AND ORDER PARTIALLY GRANTING DEFENDANTS'
MOTION FOR DISMISSAL OR SUMMARY JUDGMENT**

I. <u>INTRODUCTION</u>

    Plaintiffs Anthony Mason and Krystal Mason ("Plaintiffs") commenced this action in

Macomb County Circuit Court on August 17, 2010, alleging a series of constitutional violations

against Defendants--including unlawful arrest (Count I), unreasonable search (Count II), unjust

taking (Count III), and negligent failure to train (Count IV)--arising out of a confrontation

between Mr. Mason and Defendants on January 16, 2010.  Counts I-III are alleged against

Defendants collectively; Count IV is against the City of Warren Police Department and its Chief

of Police alone.  Plaintiffs assert their claims pursuant to 42 U.S.C. § 1983.

Pending before the Court is Defendants' motion for dismissal or summary judgment as to each of Plaintiffs' claims. Having reviewed the parties' briefs, their supporting documents, and the record as a whole, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials and that oral argument would not assist in the resolution of this matter. Accordingly, the Court will decide the motion "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2). The Court's opinion and order is set forth below.

## II. FACTUAL BACKGROUND

On January 16, 2010, Anthony Mason, a former cab driver, agreed to two personal transport requests from women he knew. Mr. Mason provided transportation using a car belonging to his wife, Krystal Mason, and did so with her consent. The first passenger, Tammy Goforth, requested a ride from her sister's house to her own home. That trip ended without incident. The second fare, Malvina Johnson, asked for a ride to "work" at a motel located in Warren, Michigan. Unbeknownst to Mr. Mason or Ms. Johnson, the Warren Police Department was in the midst of a prostitution sting at that motel.[1]

Detective Johnston and Officer Johnson, who were conducting surveillance on the target motel, observed Mr. Mason arriving at the motel, dropping off Ms. Johnson, and subsequently leaving. They followed him in an unmarked police car and requested by radio that a marked patrol car conduct a traffic stop. Mr. Mason, having already stopped at a nearby store, was on his phone in the parking lot when Detective Johnston and Officer Johnson, joined by Officers Bankowski and Masserang, approached the car and asked Mr. Mason to step out of the vehicle. Mr. Mason complied and told the officers that he had just dropped a friend off at the motel.

Soon thereafter, the police arrested Mr. Mason for possession of a controlled substance on the basis of a prescription pill bottle that was located in the car Mr. Mason was driving. The

---

[1] Ms. Johnson was subsequently arrested and charged with prostitution.

2

prescription was in Ms. Goforth's name, and the bottle contained seventeen morphine pills, a controlled substance. Defendants claim to have observed the pill bottle, along with a pink purse and multiple cell phones, from outside the vehicle. Plaintiffs argue that the pill bottle was only found after a warrantless search of the car's interior. The police took Mr. Mason into custody and seized the automobile. The charge against Mr. Mason was eventually dropped when Ms. Goforth testified to accidentally leaving her pills in the car Mr. Mason was driving.

Plaintiffs filed this complaint in Macomb County Circuit Court on August 17, 2010, alleging a series of constitutional violations against a number of parties. Every count alleged against an individual Defendant is pled against that person in both individual and official capacities. Defendants removed the case to federal court on October 19, 2010. Plaintiffs stipulated to the dismissal of four defendants on April 11, 2011.[2] The remaining Defendants filed this motion on April 29, 2011, requesting either dismissal or summary judgment as to all of Plaintiffs' claims against them.

III. <u>ANALYSIS</u>

Defendants' motion requires a degree of clarification at the outset because it uses "dismissal" and "summary judgment" almost interchangeably, despite acknowledging that the two dispositive vehicles rely on markedly different standards. For instance, the heading to Part I of Defendants' brief states "The City of Warren Police Department, the Chief of Police and Detective William Ashcroft are entitled to summary judgment." (Brief in Supp. of Defs.' Mot. for Summ. J. 7.) That section then begins by arguing that "Plaintiffs have failed to adequately plead a claim upon which relief may be granted," an invocation of the standard governing a motion to dismiss under Rule 12(b)(6), rather than a motion for summary judgment. (Brief in Supp. of Defs.' Mot. for Summ. J. 7.) The Court, then, must sort through the arguments raised in Defendants' brief, determining which

---

[2] Plaintiffs stipulated to the dismissal of Officers David Geffert, Larry Gardner, Michael Kroll, and Mark O'Kray.

sections should be treated as seeking dismissal and which should be treated as seeking summary judgment.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is treated as a motion for summary judgment under Rule 56 when the motion relies upon materials outside of the pleadings. *Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011). Therefore, the Court will treat those portions of Defendants' motion that rely on the pleadings alone as seeking dismissal and those sections that rely on collateral material as seeking summary judgment.

**A.    Applicable Legal Standards**

1.    Dismissal for failure to state a claim

Rule 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

2.    Summary judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).[3]  The Court also has the authority to grant summary judgment on grounds not raised by the

parties. Fed. R. Civ. P. 56(f)(2).  "[A] party seeking summary judgment always bears the initial

responsibility of informing the [Court] of the basis for its motion, and identifying those portions

of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citations

omitted).

In deciding a motion brought under Rule 56, the Court views the evidence in the light

most favorable to the nonmoving party.  *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir.

2006).  Yet, "[a] party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record" or "showing that the materials

cited do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1)(A)-(B).

"If a party fails to properly support an assertion of fact or fails to properly address another

party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the

motion[.]"  Fed. R. Civ. P. 56(e)(2).  "Factual disputes that are irrelevant or unnecessary will not

be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.      Plaintiffs' Claims Against the Warren Police Department**

Plaintiffs have included the Warren Police Department among the parties alleged to have

committed constitutional violations under § 1983.  However, under Michigan law, municipal police

departments are considered agents of the municipality rather than independent entities capable of

being sued.  *Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir.

1994) (affirming judgment in favor of Romulus Police Department on all counts because police

---

[3] Amendments to Rule 56 became effective December 1, 2010.  Since Defendants filed their motion on April 29, 2011, the new rule controls.  While the parties cite to the earlier rule in their briefs, the legal standard has not changed.  Fed. R. Civ. P. 56 Advisory Committee Notes (2010 Amendments) ("The standard for granting summary judgment remains unchanged.").

department is "a creature of the municipality") (citing Mich. Comp. Laws § 92.1).  As such, the

Warren Police Department cannot be a Defendant in this case.  Since they cannot be a party to this

case, Plaintiffs have failed to state a claim upon which relief can be granted against the Warren

Police Department.  Therefore, dismissal of all claims against the Warren Police Department is

appropriate.  *See id.*; *McCree v. City of Detroit*, No. 10–14478, 2011 WL 3897957, at *2 (E.D. Mich.

Aug. 10, 2011); *Jeffrey v. Royal Oak Police Dept.*, No. 10–10463, 2011 WL 3849417, at *3 (E.D.

Mich. July 27, 2011); *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997); *Pierzynowski

v. Detroit Police Dept.*, 941 F. Supp. 633, 637 n.4 (E.D. Mich. 1996); *Moomey v. City of Holland*,

490 F. Supp. 188, 189 (W.D. Mich. 1980).

**C.      Plaintiffs' Claims Against Detective William Ashcroft and the Chief of Police in
         Their Individual Capacities**

Individual liability under 42 U.S.C. § 1983 depends on showing that a Defendant was

personally involved in the constitutional deprivations alleged.  *Kentucky v. Graham*, 473 U.S.

159, 166 (1985); *Smith v. Michigan*, 256 F. Supp. 2d 704, 712 (E.D. Mich. 2003) (citing *Hays v.

Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)).  This much is obvious considering § 1983

requires proof of a constitutional deprivation by a specific person acting under color of law.  *See

Graham*, 473 U.S. at 166 ("On the merits, to establish personal liability in a § 1983 action, it is

enough to show that the official, acting under color of state law, caused the deprivation of a

federal right.") (emphasis and citation omitted).  Mere affiliation with a person who is violating §

1983 will not bring the affiliated individual within the scope of personal liability.  A § 1983

claim will thus fail against parties who did not participate in the deprivations alleged.

Despite viewing the record in the light most favorable to Plaintiffs, the Court has been

unable to find a single reference to Detective Ashcroft in either the pleadings or record.

Plaintiffs do not mention Detective Ashcroft in their complaint except to list him as a party-

6

defendant; and the depositions of Mr. and Mrs. Mason fail to reveal any mention of Detective Ashcroft.[4]  The same is true with regard to the Chief of Police.  Plaintiffs have not even suggested that Detective Ashcroft or the Chief of Police were present when Mr. Mason was arrested, let alone that either played a causal role in the deprivations alleged to have occurred.[5]  It thus appears that Detective Ashcroft and the Chief of Police are entitled to dismissal since Plaintiffs have failed to offer any facts personally implicating either individual in the constitutional violations alleged.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Smith*, 256 F. Supp. 2d at 712.  Since the record lacks pertinent allegations, Plaintiffs have failed to state cognizable claims against Detective Ashcroft or the Chief of Police.  Therefore, dismissal is granted as to Plaintiffs' claims against Detective Ashcroft and the Chief of Police in their individual capacities.  Fed. R. Civ. P. 12(b)(6).

**D.     Plaintiffs' Remaining Claims Against Defendants in Their Individual Capacities**

Title 42, section 1983 of the United States Code provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Establishing personal liability under § 1983 requires showing "that the official, acting under color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  However, in such suits, the individual defendant may have certain defenses available such as qualified immunity or objectively reasonable reliance on existing law.  *Id.* at 166-67.

---

[4] Detective Ashcroft makes a single appearance in the errata sheets from Plaintiffs' depositions.  That reference, however, merely points to the first page of each deposition, where Detective Ashcroft is included in a list of party-defendants.
[5] Since § 1983 official capacity claims are judged by a different standard, those claims are addressed in Part E, *infra*.

"The defense of qualified immunity shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)). Qualified immunity balances two important interests, the need to hold public officials accountable for abuses of power and the need to shield officials from vexatious litigation when they reasonably exercise their duties; and it applies regardless of whether the error was a mistake of fact, law, or both. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Determining whether qualified immunity is warranted involves two questions: first, whether the facts alleged, taken in the light most favorable to Plaintiffs, show a violation of a constitutional right; and second, whether the right was clearly established. *Humphrey*, 482 F.3d at 846 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[6] Both portions of this inquiry require the Court to make findings of law and fact. As such, at the summary judgment stage, qualified immunity is only appropriate if there are no genuine issues of material fact and Defendants are entitled to qualified immunity as a matter of law. Fed. R. Civ. P. 56(a). If the Court cannot find that critical fact are undisputed based on the record available, then the Court must deny qualified immunity. *See, e.g.*, *Hanson v. City of Fairview Park*, 349 Fed. App'x 70, 71-72 (6th Cir. 2009) (affirming denial of qualified immunity when material facts were unresolved regarding whether police officer acted reasonably).

For a number of years the Supreme Court required that the qualified immunity inquiry occur sequentially. Since *Pearson*, however, the successive aspect of the test is no longer

---

[6] The Sixth Circuit has occasionally described this test using three prongs. The "distinction is not material." *Humphrey v. Marbry*, 482 F.3d 840, 847 n.2 (6th Cir. 2007).

mandatory: "judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances of the case at hand." 555 U.S. at 236. If either question is answered in the negative, then qualified immunity attaches. "A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey*, 482 F.3d at 847 (quoting *Saucier*, 533 U.S. at 202). "If no reasonably competent officer would have taken the same action, then qualified immunity should be denied; however, 'if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (brackets original).

1.   Defendants are not entitled to summary judgment or qualified immunity for their search of Mrs. Mason's car.

Plaintiffs claim that Defendants lacked a reasonable basis to search the car driven by Mr. Mason on the night of January 16, 2010. (Pls.' Compl. ¶ 19.) Defendants, on the other hand, claim that the police observed the bottle of morphine pills that led to Mr. Mason's arrest from outside the car such that Mr. Mason's Fourth Amendment rights were not implicated by Defendants' conduct. (Brief in Supp. of Defs.' Mot. for Summ. J. 13.) The Fourth Amendment requires that police officers obtain a warrant prior to conducting a search. *United States v. Galaviz*, 645 F.3d 347, 345-55 (6th Cir. 2011) (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). Searches conducted outside of the judicial process are *per se* unreasonable, subject to limited exceptions. *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009).[7] That said, "an officer's mere observation of an item left in plain view" generally does not implicate the Fourth

---

[7] For example, under the proper circumstances, the search of Mrs. Mason's car could be justified by probable cause to believe the car contained contraband, *United States v. Ross*, 456 U.S. 798, 823 (1982), or as a search incident to a lawful arrest, *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009).

Amendment concerns involved in police searches.  *Horton v. California*, 496 U.S. 128, 133 n.5 (1990).  In order to seize an item, however, the object's criminality must be immediately apparent: the item's connection to criminal activity must be apparent without further investigation.  *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 555 (6th Cir. 2003) (quoting *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002)).  Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Here, Defendants have failed to convince the Court that they are entitled to judgment as a matter of law.

Defendants claim that that the officers present the night of Mr. Mason's arrest observed the morphine pill bottle in plain view on the passenger side of the vehicle.  (Brief in Supp. of Defs.' Mot. for Summ. J. 13.)  Indeed, the affidavits of Detective Johnston and Officer Johnson support this claim.  (Brief in Supp. of Defs.' Mot. for Summ. J. Ex. 2 at ¶ 9; 3 at ¶ 9.)  Plaintiffs disagree, contending that the pills were "out of sight."  (Pls.' Compl. ¶ 17.)  This factual disparity aside, however, Defendants have not addressed whether the pill bottle's criminality was readily apparent from outside the car.  Assuming *arguendo* that the pill bottle <u>was</u> in plain sight from the outset, the Court is not convinced, and Defendants have not asserted, that the officers observing the pill bottle were able to ascertain from mere observation, outside of the car, (1) that the pill bottle contained a controlled substance, or (2) that the pill bottle was not in Mr. Mason's name.  It is not *per se* illegal to possess a prescription pill bottle, and an inquiry into the nature of the pills beyond that revealed by observation alone would require probable cause. *Shamaeizadeh*, 338 F.3d at 555.  *See, e.g.*, *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987) (invalidating police seizure of stolen stereo equipment because criminality was not apparent until police physically manipulated the equipment, moving it to access and record serial numbers).  By

10

contrast, case law supporting an association between illegal activity and a pill bottle merely observed generally depends on something more than the presence of a pill bottle alone, and no such facts are present here. *See, e.g.*, *United States v. Adams*, No. 09-20224, 2010 WL 3070033, at *2 (E.D. Mich. August 4, 2010) (hydrocodone pill bottle far larger than doctors prescribe to patients); *United States v. Kulkarni*, No. 10-00217, 2010 WL 5059704, at *11 (E.D. Cal. Dec. 3, 2010) (unlabeled prescription pill bottle); *Ohio v. Stiffler*, No. 21008, 2006 WL 37840, at *3 (Ohio Ct. App. Jan. 6, 2006) (same). Without reaching the question of whether the pill bottle was in plain sight, summary judgment is plainly inappropriate because Defendants have not addressed the obviousness of the pill bottle's criminality. The lack of evidence and argumentation on point leads to the conclusion that Defendants are not entitled to judgment as a matter of law.

The Court is entitled to grant summary judgment on grounds not raised by the parties. Fed. R. Civ. P. 56(f)(2). As such, if the facts support a separate justification for Defendants' purported search, then summary judgment would nonetheless be appropriate. However, the facts insufficiently support the most likely alternative justifications. The first such rationale is based on the Supreme Court's ruling in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), where the Supreme Court held that the police may search a vehicle incident to arrest only when the arrestee is unsecured and has access to the passenger compartment of the vehicle, unless there is a reasonable belief that evidence relevant to the crime of arrest may be found in the vehicle. 129 S. Ct. at 1719. Here, the facts regarding when Mr. Mason was under arrest are too unclear to determine whether Mr. Mason was unsecured and within reaching distance of the car. According to Mr. Mason's deposition, a police officer "grabbed" Mr. Mason's hand and put it behind his back from the moment Mr. Mason exited his car. (Brief in Supp. of Defs.' Mot. for Summ. J.

11

Ex. 5 at 39:14-16.)  Furthermore, holding that the search that produced the pill bottle was incident to a lawful arrest begs the question: if Mr. Mason was arrested for possession of the pill bottle, then any search that led to the pill bottle cannot logically be an *ex ante* search incident to arrest.  Clearly, important factual disputes remain on these points.

In the alternative, Defendants' purported search could be justified under the Supreme Court's holding in *United States v. Ross*, 456 U.S. 798 (1982), which authorizes a vehicle search when the police have probable cause to believe the automobile contains contraband.  456 U.S. at 823.  Justifying the search for the pill bottle under *Ross*, however, leads to the same question begging as under *Gant*: nothing in the record establishes that Defendants had probable cause to believe the pills were contraband prior to removing them from Mrs. Mason's car.  Defendants' search could be otherwise justified by a probable cause belief that the car driven by Mr. Mason contained contraband related to Mr. Mason's suspected transportation of a prostitute.  *See* Mich. Comp. Laws § 750.459.  The facts put forth by the parties, however, provide insufficient grounds for the Court to grant summary judgment on this basis.  It is not clear what contraband, if any, the police would have expected to find in relation to the transportation of a prostitute.

Consequently, the Court must also deny Defendants' request for qualified immunity because important underlying facts affecting the legality of Defendants' alleged search remain in dispute.  Qualified immunity depends on a right being "clearly established," which the Court can find so long as the illegality of the conduct is not apparent; that is, so long as other reasonably competent officers would take the same course of action under the circumstances.  *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).  However, because material facts concerning the alleged search remain disputed, the Court cannot determine the apparent illegality of Defendants' conduct.  Even if the Court grants

all of Defendants' factual inferences, it remains to be seen whether the alleged search of Mrs. Mason's car was clearly unlawful.  Therefore, the Court cannot determine whether Mr. Mason had a clearly established right against a search, and qualified immunity must be denied.

For the reasons discussed above, too many questions of material fact remain unanswered for summary judgment or qualified immunity to be appropriate.  The Court lacks sufficient facts to make a determination as a matter of law, and those facts that are available remain subject to dispute.  Consequently, the Court will not grant summary judgment as to Plaintiffs' illegal search claim or Defendants' request for qualified immunity.  Fed. R. Civ. P. 56(a).

      2.    <u>Defendants are entitled to summary judgment for their arrest of Mr. Mason.</u>

An arrest without a warrant is reasonable under the Fourth Amendment when the police have probable cause to believe a criminal offense has been or is being committed.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Moreover, the offense for which the police have probable cause to arrest need not be related to the offense identified at the time of arrest.  *Id.* at 153.  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."  *Henry v. United States*, 361 U.S. 98, 102 (1959); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).  Once probable cause is established, the police are not required to investigate or presume the truth of the arrestee's claims.  *Boykin v. Van Buren Twp.*, No. 04-72387, 2006 WL 305751, at *6 (E.D. Mich. Feb. 9, 2006), *aff'd*, 479 F.3d 444, 449-50 (6th Cir. 2007).  Under Michigan law, an arrest without a warrant is proper when a crime is committed in an officer's presence.  Mich. Comp. Laws § 764.15(1)(a).

Here, Detective Johnston and Officer Johnson observed Mr. Mason dropping off a suspected prostitute at a hotel that was under surveillance.  (Brief in Supp. of Defs.' Mot. for

Summ. J. Ex. 2 at ¶¶ 3-4; Ex. 3 at ¶¶ 3-4.)  Knowingly transporting a prostitute for the purpose of prostitution is a crime in Michigan.  *See* Mich. Comp. Laws § 750.459.  While Detective Johnston and Officer Johnson could not have definitively known whether Mr. Mason had committed the crime of transporting a prostitute, the facts and circumstances known at that time most certainly would warrant a prudent man in believing that the offense had been committed. *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).  Additionally, the purported crime was committed in Detective Johnston and Officer Johnson's presence.  *See* Mich. Comp. Laws § 764.15(1)(a).  Defendants were, therefore, justified in arresting Mr. Mason.

Plaintiffs argue that "the officers in this case had no facts to show that the Plaintiff was engaged in or planning a criminal act" because, "for all the police knew, it was nothing more than [Mr. Mason] dropped [Ms. Johnson] off at the motel."  (Pls.' Objection to Defs.' Mot. for Summ. J. 7.)  This argument is unavailing, however.  While the police could not know with certainty whether Mr. Mason had knowingly transported a prostitute as opposed to merely dropping someone off at a motel, certainty is not the standard by which probable cause is judged. Rather, the facts and circumstances known to the police at the time need only provide a reasonable basis for believing that the crime had been committed.  As discussed above, witnessing the transportation of a suspected prostitute in the midst of a sting operation provides ample evidence for a prudent person to believe that the crime had been committed.

Furthermore, the fact that Defendants subsequently arrested Mr. Mason for possession of a controlled substance has no bearing on the Court's determination.  As the Supreme Court made clear in *Devenpeck*, the offense identified at the time of arrest (here, possession of a controlled substance) need not be "closely related" to the offense establishing probable cause (here, transportation of a prostitute).  543 U.S. at 153-54.  Therefore, the Court finds that no genuine

14

dispute exists as to any material fact, and the uncontested facts demonstrate that Defendants had probable cause to arrest Mr. Mason. His arrest did not violate any federal rights. Therefore, Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

3.   Defendants are entitled to summary judgment as to the seizure of Mrs. Masons' car.

Plaintiffs' complaint ambiguously alleges that either the seizure of Mrs. Mason's car or the payment Mrs. Mason made for the return of her car violated the Takings Clause of the Fifth Amendment. (Pls.' Compl. ¶¶ 21-23.) Defendants respond that forfeiture statutes do not violate the Fifth Amendment and that a release signed by Mrs. Mason provides further grounds to bar Plaintiffs' claim. (Brief in Supp. of Defs.' Mot. for Summ. J. 14.) When the police seized Mrs. Mason's car following Mr. Mason's arrest, they did so pursuant to Michigan's forfeiture statutes, which provide for the seizure and forfeiture of property used in criminal activity. *See Hollins v. Detroit Police Dept.*, 571 N.W.2d 729, 731 (Mich. Ct. App. 1997).

The principal case on point, *Bennis v. Michigan*, 516 U.S. 442 (1996), considered the constitutionality of state asset seizure laws, and did so in the context of Michigan's seizure laws in particular. In *Bennis*, the State had sought the forfeiture of a married couple's jointly-owned car after the husband was arrested for engaging in sexual activity with a prostitute in the car. 516 U.S. 442, 443-44. Mrs. Bennis claimed that, while Mr. Bennis had her consent to use the car, "she did not know that he would use it to violate Michigan's indecency law." *Id.* at 444. As an "innocent owner," Mrs. Bennis commenced a proceeding to challenge the forfeiture of her interest in the car under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. *Id.* at 446.

In short, the Supreme Court held that "an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to

15

be put to such use." *Id.* As such, Plaintiffs' Fifth Amendment claim fails as a matter of law because *Bennis* clearly stands for the proposition that state forfeiture statutes generally, and Michigan's in particular, are constitutional as against the perpetrator as well as innocent owners. 516 U.S. at 452-53. Nothing presented here compels a different result.

Furthermore, the *Bennis* opinion states that, unless a § 1983 plaintiff establishes that the forfeiture proceeding itself violated the Fourteenth Amendment, any related Fifth Amendment claim loses its viability:

> if the forfeiture proceeding . . . did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding . . . to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than . . . eminent domain.

*Id.* at 452. In other words, the Fifth Amendment applies when the government acquires property through eminent domain. Forfeiture statutes allow the government to acquire private property through a process other than eminent domain; and compensation is not required when the government acquires property through constitutionally valid means other than eminent domain. Plaintiffs have not challenged the forfeiture proceedings followed by the Warren Police Department. They merely claim that, in any event, an unconstitutional taking occurred. Plaintiffs' Fifth Amendment claim thus fails.

Even if Plaintiffs had challenged the police department's procedures, however, nothing in the record suggests the police followed constitutionally dubious procedures. At the time of the seizure, the police had grounds to believe the car had been used in connection with a controlled substance crime and the transportation of a prostitute. Furthermore, it appears the police released the car before the controlled substance charge against Mr. Mason was dropped. There was thus no unlawful retention. Since the government had "already lawfully acquired" the car, nothing in

16

Plaintiffs' brief or relevant case law suggests compensation is required.  *Id.* at 452.  To the extent Plaintiffs argue that the money Mrs. Mason paid in exchange for her car was "taken" in violation of the Fifth Amendment, no facts are alleged to suggest that Mrs. Mason was compelled to relinquish her money.  She voluntarily paid for the return of her properly-seized car and signed a release upon doing so.

Defendants point to the release signed by Mrs. Mason as a further bar to Plaintiffs' claim. (*See* Brief in Supp. of Defs.' Mot. for Summ. J. Ex. 7.)  The release purports to absolve the Warren Police Department of any claims arising out of the seizure of Mrs. Mason's car.  (*Id.*) Plaintiffs argue, however, that the release is invalid because it states that the car was "seized due to its use in a controlled substance transaction" whereas subsequent events established that no such transaction occurred.[8]  (Pls.' Objection to Defs.' Mot. for Summ. J. 9.)  This claim is unpersuasive.

"A release of liability is valid if it is fairly and knowingly made."  *Hoffner v. Lanctoe*, No. 292275, 2010 WL 4320340, at *3 (Mich. Ct. App. Nov. 2, 2010) (citing *Wyrembelski v. St. Clair Shores*, 553 N.W.2d 651 (Mich. Ct. App. 1996)).  Contracts are interpreted according to their plain and ordinary meaning; and construction is a question of law when the contract is unambiguous.  *Id.* (citations omitted).  The release at issue here is, on its face, unambiguous.  It clearly states who the signor is releasing (the Warren Police Department) and what claims are being released (any and all claims arising from the property seizure).  The Court is unaware of any alternative reading of the release.  Furthermore, Plaintiffs do not contend that an ambiguity exists.  The release thus clearly states the party's binding intent: in consideration for return of her

---

[8] At this point in their brief, Plaintiffs cursorily attempt to tack on an additional allegation in their response: that Mrs. Mason's signature on the release was obtained by coercion.  (Pls.' Objection to Defs.' Mot. for Summ. J. 9.) The Court will not address this afterthought since Plaintiffs did not raise this claim in time to give Defendants a chance to respond and because Plaintiffs fail to offer any supporting facts or argumentation on point.

car, Mrs. Mason agreed to waive all claims arising out of the seizure that she may have had against the Warren Police Department.

Plaintiffs' argument, that the release is invalid because it was ultimately determined that no controlled substance transaction took place, misses the point. The release is not conditioned on the existence of a controlled substance transaction; it merely states the initial reason for seizing the car and helps describe with specificity which car is being released. The seizure of Mrs. Mason's car did not violate the Constitution, and the release Mrs. Mason signed bars her claim. Therefore, summary judgment is appropriate here as well: no dispute as to any material fact exists, and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**E.     Plaintiffs' Claims Against Defendants in Their Official Capacities**

In addition to alleging the above constitutional violations against Defendants in their individual capacities, Plaintiffs also allege the same violations against Defendants in their official capacities.[9]  Official capacity suits do not focus on the individual conduct of a particular defendant and thus are generally seen as "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Suits against government officials in their official capacity should thus be treated as suits against the government. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Consequently, Plaintiffs' official capacity claims will be addressed collectively.

More is required of the Plaintiff in an official capacity suit since "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Kentucky*, 473 U.S. at 166 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). In order to constitute a "moving force," a government entity's policy or custom must have played a part

---

[9] Because it is subject to a different legal standard, Plaintiffs' negligent failure to train claim against the Chief of Police is dealt with separately in Part F, *infra*.

18

in the violation of federal rights alleged.  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011);

*Hafer*, 502 U.S. at 25; *Kentucky*¸ 473 U.S. at 166.  "Official municipal policy includes the

decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

persistent and widespread as to practically have the force of law."  *Connick*, 131 S. Ct. at 1359.

Here, even construing the complaint in the light most favorable to Plaintiffs, the Court

finds that Plaintiffs' complaint fails to plead a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6).  The Supreme Court recently has made clear that, in pleading a cause of action,

"a formulaic recitation of the elements of a cause of action will not do[,]" Plaintiffs have failed to

even allege the elements of an official capacity suit under § 1983.  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  Plaintiffs' entire complaint, save for the negligent failure to train

claim, focuses on Defendants' conduct the night Mr. Mason was arrested.  No part of the

complaint alleges a policy or custom of constitutionally suspect arrests, searches, or seizures; and

Plaintiffs also fail to provide factual allegations supporting such a claim.  Plaintiffs have failed to

state an official capacity claim altogether, let alone one that rises above the speculative level.

*See id.* at 570.  Therefore, the Court dismisses Plaintiffs' claims against Defendants in their

official capacities for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).

**F.      Plaintiffs' Negligent Failure to Train Claim**

Plaintiffs' final claim alleges that the Chief of Police failed to properly train personnel in

avoiding unlawful arrests, searches, or seizures.  (Pls.' Compl. ¶¶ 25-26.)  As with official

capacity claims discussed above, "[i]n limited circumstances, a local government's decision not

to train certain employees about their legal duty to avoid violating citizens' rights may rise to the

level of an official government policy for purposes of § 1983."  *Connick*, 131 S. Ct. at 1359.  A

municipality's liability under § 1983 is "at its most tenuous where a claim turns on a failure to train." *Id.* Establishing such a claim requires proof that the failure to train amounts to "deliberate indifference" to the rights of those whom municipal employees come into contact with. *Id.* Moreover, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1360. As such, deliberate indifference can be found where city policymakers are on notice regarding deficient training and the violation of rights that occur as a result. *Id.* "A pattern of similar constitutional violations by untrained employees" will also suffice. *Id.* Mere negligence will not support a failure to train claim. *Id.* at 1359-60.

Here, Plaintiffs have not pled a failure to train since their claim sounds in negligence. As the Supreme Court has made clear, establishing a failure to train requires demonstrating deliberate indifference, a far more stringent standard than mere negligence. *Id.* Plaintiffs specifically aver that the Chief of Police failed to train officers, but they have not claimed that policymakers were on notice as to constitutional violations by officers, nor have they suggested that a pattern of similar constitutional violations have occurred. Moreover, Plaintiffs have not alleged a single fact to suggest the existence of deliberate indifference, notice of deficient training, or a pattern of similar violations. Rather, the most generous reading of Plaintiffs' complaint merely suggests that the single incident involving Mr. Mason evinces Defendants' alleged failure to train. In order to survive dismissal, Plaintiffs must plead a complete failure to train claim and offer facts in support thereof. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Having fallen short on both fronts, Plaintiffs have failed to plead a claim upon which relief can be granted. Therefore, dismissal is appropriate. Fed. R. Civ. P. 12(b)(6).

### III. CONCLUSION

20

For the reasons set forth in this opinion, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted as against the Warren Police Department and all Defendants in their official capacities.  Plaintiffs have also failed to state a claim upon which relief can be granted with regard to their negligent failure to train claim.

The Court further finds that summary judgment is appropriate as to all of Plaintiffs' remaining claims except for their unlawful search claim.  Therefore,

IT IS HEREBY ORDERED that Defendants' motion [Dkt. #9] is GRANTED IN PART in accordance with the rulings stated in this opinion.


s/Gerald E. Rosen
Gerald E. Rosen
Chief Judge, United States District Court

Date:  October 21, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 21, 2011, by electronic and/or ordinary mail.


s/Ruth A.Gunther
Case Manager
(313) 234-5137